Seymour DEUTSCH, Plaintiff,

v.

Patricia HARRIS, Secretary, Department of Health and Human Services, Defendant.

No. 80 Civ. 0876 (LBS).

United States District Court, S. D. New York.

March 10, 1981.

Marc L. Ames, New York City, Solomon Rosengarten, New York City, of counsel, for plaintiff.

John S. Martin, Jr., U. S. Atty. for the Southern District of New York, New York City, Thomas H. Belote, Asst. U. S. Atty., Frank V. Smith, III, Regional Atty., Michael Noorigian, Asst. Regional Atty., Secretary of Health and Human Services, New York City, of counsel, for defendant.

## OPINION

SAND, District Judge.

This is an action under § 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to review the decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff Seymour Deutsch disability insurance benefits. Both parties have moved for judgment on the pleadings.

*The Facts*

Plaintiff was born in Czechoslovakia on July 29, 1929. He emigrated to the United States in 1948. He attended one year of school. He is able to read, but cannot write English.

From 1964 through 1973, the plaintiff was involved in the manufacture of fur coats. He cut, stretched and sewed fur. However, he left the business because it was unstable and he did not receive steady orders. In 1974, he became a carpenter and "houseman". In March of 1975 while working on a building, he fell from a scaffold, which was fifteen or sixteen feet from the ground. As a result of the accident, he injured his back and spine and he has suffered severe back pains. He has been confined to his home since the accident. Occasionally, he visits his daughter and goes to the doctor. He has not driven a car for the past three years, having his wife drive him to see his daughter and to visit the doctor. He is unable to sit in the same position steadily.

Plaintiff's application for disability benefits was denied. A hearing was held before

an Administrative Law Judge ("ALJ") on February 1, 1979. The ALJ concluded the plaintiff was "not disabled" under Regulation § 404.1513 [1] and Rule 201.20, Table No. 1 of Appendix 2, Subpart P, Regulation 4, a decision that was based on his findings as to claimant's maximum sustained work capacity, age, education, and work experience. The ALJ's decision was affirmed by the Appeals Council, making it the final decision of the Secretary. Plaintiff brought suit in this Court seeking review of the decision, Section 205(g), 42 U.S.C. § 405(g).

*Discussion*

In order for an individual to be entitled to disability insurance benefits, he must prove that he is disabled, defined in the Act as an "inability to engage in any substantial gainful activity by reason of any medically determined physical impairment which can be expected to result in death or can be expected to last for a continuous period of more than 12 months;" Section 223(a)(1)(A), 42 U.S.C. § 423(d)(1)(A). An individual is disabled if his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work." Section 223(d)(2)(A), 42 U.S.C. § 423(d)(2)(A).

The burden of persuasion is on the individual seeking the disability benefits, to prove that he is unable to work at his former employment due to his impairment, *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). After the claimant proves his inability to work at his former job, the burden of producing evidence shifts to the Secretary, who must demonstrate the existence of available employment compatible with the claimant's impairment. *Id.* The availability of compatible employment must be shown to be real and not merely theoretical. *Kerner v. Flemming*, 283 F.2d 916, 921 (2d Cir. 1960); *Maldonado v. Mathews*, 424 F.Supp. 301, 305–06 (E.D.N.Y.1976). In *Kerner*, the court required the Secretary to inquire: "[W]hat can applicant do and

what employment opportunities are there for a man who can do only what applicant can do?" *Kerner*, 283 F.2d at 921.

The Secretary has recently adopted regulations setting forth rules reflecting the major functional and vocational patterns to be applied in showing what other employment opportunities are available to a claimant who is not engaged in substantial gainful activity, not qualified as disabled on medical considerations alone (*see* 20 C.F.R. § 404.1526) and not able to return to his "vocationally relevant" past work because of a medically determined impairment (*see* 20 C.F.R. § 404.1520(f)). 20 C.F.R. § 404.-1569 and Appendix 2. The operation of the rules is described as follows:

"They also reflect the analysis of the various vocational factors (i. e., age, education and work experience) in combination with the individual's residual functional capacity (used to determine his or her maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity other than his or her vocationally relevant past work. Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled or not disabled. However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute such findings. Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. In any instance where a rule does not apply, full consideration must be given to all of the relevant facts of the case in accordance with the definitions of each factor in the appropriate sections of the regulations." Rule 200.00 of Appendix 2, Subpart P, Regulation No. 4.

1. The regulations have been revised and re-numbered, *see* 45 Fed.Reg. 55566ff. (Aug. 20, 1980), and we will refer to the new section numbers in this opinion.

*See also, Figurroa v. Secretary of Health and Human Services*, Slip op., No. 79–5018 (S.D.N.Y. Sept. 23, 1980).

There is no dispute that the plaintiff is unable to return to his former employment. Thus, the finding of disability turns on whether the Secretary has met her burden of producing evidence with respect to the availability of other employment opportunities for the plaintiff. *See, Kerner, supra.* Plaintiff asserts that the defendant failed to meet her burden of producing evidence at the hearing, because the ALJ failed to call a vocational expert and failed to show in what, if any, substantial gainful employment the plaintiff could engage. The defendant asserts that the decision of the Secretary that plaintiff was not under a disability is supported by substantial evidence and therefore requires an affirmance of the Secretary's decision.

We find that the Secretary's decision, which was based on application of the new regulations, was not supported by substantial evidence. The evidence with respect to plaintiff's ability to perform sedentary work was insufficient. In particular, the ALJ failed to deal with medical evidence which indicated that the plaintiff must alternate sitting and standing, a fact which makes it unclear whether the plaintiff can perform sedentary work within the meaning of the regulations. We remand the case so that further evidence can be taken concerning plaintiff's ability to do sedentary work. Also, we direct that the ALJ make more detailed findings as to the transferability of the plaintiff's work skills. Therefore, we do not reach the issue on whether a vocational expert is required.[2]

Under § 205(g) of the Act, 42 U.S.C. § 405(g), the Secretary is given the initial responsibility for making findings of fact and decisions regarding the merits of the claim of disability. Federal courts must accept as conclusive any findings of fact made by the Secretary if supported by substantial evidence. Substantial evidence has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978); *Flores v. Dept. of H.E.W.*, 465 F.Supp. 317 (S.D.N.Y.1978). In determining whether there is substantial evidence, a court considers all the evidence on the record, including "(1) the objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the plaintiff . . . and (4) the plaintiff's

---

2. The testimony of vocational experts is the *preferred method of proving* what particular job the claimant can perform, although there is no blanket requirement that it be obtained. *See, e. g., Hall v. Secretary of H.E.W.*, 602 F.2d 1372, 1377 (9th Cir. 1979) ("A general statement that a claimant may engage in 'sedentary work' without testimony by a vocational expert who can identify specific jobs, absent other reliable evidence of the claimant's ability to engage in other occupations, does not satisfy the substantial evidence test. . . . Although there is no per se rule that a vocational expert's evaluation is necessary. . . .") *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978); *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975); *Garrett v. Richardson*, 471 F.2d 598, 603–04 (8th Cir. 1972) (the burden of providing a vocational counselor to determine if there are jobs in the national economy should rest with the hearing examiner, "and in the absence of substantial evidence from sources bearing directly on the issue of substantial gainful activity, the testimony of a vocational counsel is essential for the affirmance of an examiner's findings."); *Flores v. Dept. of H.E.W.*, 465 F.Supp. 317, 324 (S.D.N.Y.1978); *Kenny v. Weinberger*, 417 F.Supp. 393, 398 (E.D.N.Y.1976). The *Hall* case, though not involving the new regulations and tables, suggests that the vocational expert can be used in order to prove the plaintiff's ability to perform "sedentary work" within the meaning of the new regulations.

Whether the new regulations and tables preclude the need for a vocational expert to testify once a "decision" under the new regulations that the claimant is "not disabled" is made is not a settled issue. *Compare Vega v. Harris*, 636 F.2d 900 (2d Cir. 1981); *Stallings v. Harris*, 493 F.Supp. 956 (W.D.Tenn.1980); *Boyce v. Harris*, 492 F.Supp. 751, 752 (D.S.C.1980); *Crowe v. Harris*, 489 F.Supp. 683, 689 (E.D. Tenn.1980); *with Phillips v. Harris*, 488 F.Supp. 1161, 1166–67 (W.D.Va.1980), and we need not address it in the context of this motion.

educational background, age and work experience." *Gold v. Secretary of H.E.W.*, 463 F.2d 38, 41 n.2 (2d Cir. 1972).

The record in this case includes the following medical reports of six doctors who have examined the plaintiff over the past six years.[3] Dr. Francis DiFabio treated plaintiff from March 26, 1975 to November 13, 1976 and found the following: (1) post concussion syndrome and post traumatic cervical osteoarthritis, (2) cervical myositis and neurotis, (3) loss of hearing, (4) dorsolumbar neuritis and mysitis with radiculitis to lower extremities, (5) recurrent neuralagias of hands with numbness and loss of control, (6) post traumatic anxiety states (Tr. 114). A report dated May 24, 1977 described normal gait, flattening of the lumbosacral spine, moderately restricted motion of the trunk, moderately restricted straight leg raising test bilaterally, no atrophy, no sensory loss, and normal reflexes. Dr. DiFabio concluded plaintiff had a partial disability (Tr. 115).

Dr. Adam Lewenberg examined plaintiff at the request of the disability determination program on January 16, 1978. He diagnosed (1) post concussion syndrome with recurrent vertigo, weakness and headaches, (2) partial permanent hearing loss, anxiety and depression, (3) post traumatic lumbar sacral and dorsal lumbar osteoarthritis with possible radiculitis of both arms and (4) hypertension. Dr. Lewenberg was of the opinion that plaintiff was completely disabled.

On May 4, 1978, Dr. Irwin Goldberg, plaintiff's treating physician, stated that plaintiff could move about adequately, that he could walk one half block, stand fifteen minutes, lift and carry five pounds, sit one half hour, and had the ability to grasp and manipulate. He also concluded that plaintiff could not return to his former work but retained the capacity for light work where he could alternately sit and stand. At the hearing he suggested plaintiff could perform a sedentary assembly-like job, provided long periods of sitting and bending are not involved. (Tr. 75–79).

A different Doctor Goldberg completed a medical report on January 26, 1979 in which he made diagnoses similar in some respects to other doctors and made a prognosis of permanent disability.

Dr. Frank Quattromani, who examined plaintiff at the request of the disability determination program, concluded that the plaintiff could walk six to eight blocks, could stand for one to two hours, could lift fifteen to twenty pounds, could bend when necessary, and could grasp and manipulate fairly well. Based on such a physical capacity, he concluded that plaintiff could do light work. (Tr. 123–127). Dr. Irwin Goldberg, while testifying, attempted to reconcile the differing views of the plaintiff's physical capacities by noting that where Dr. Quattromani lives, the blocks are shorter. (Tr. 77).

Dr. Francisco Suarez in a letter dated January 30, 1979, diagnosed anxiety neurosis secondary to the trauma, osteoarthritic changes in the dorsal spine, and radiculitis and low back syndrome. He believed that the plaintiff was permanently disabled.

Plaintiff appeared at the hearing with his wife and testified as to his physical condition, his daily activities and work history. At the hearing, the plaintiff complained of pain over his entire body (Tr. 47), stomach pains (Tr. 50), and trouble with his spine (Tr. 51–52).

Under the new regulations, 20 C.F.R. § 404.1513 and Rule 201.00, Table No. 1 of Appendix 2, Subpart P, Regulation No. 4, the ALJ must make findings as to plaintiff's age, education, work experience, and residual functional capacity. The record substantiates the ALJ's finding as to plaintiff's age and education. At the time of the hearing, plaintiff was 49 years old, and therefore, under the regulations was considered a "younger individual age 45–49." Plaintiff is also a graduate of public school

---

**3.** The contents of the medical reports, as summarized by defendant, have not been disputed here. *See* Tr. at 116–51; defendant's Memorandum at 6–9. However, further argument by plaintiff on remand with respect to the medical reports is not precluded.

in Europe and can read, but cannot write, English, which under the regulations is considered "limited or less" education. That is, he does not have the competence in "reasoning, arithmetic and language skills acquired through formal schooling at a 12th grade level or above." 20 C.F.R. § 404.1564(b)(4). He clearly fails to demonstrate language skills of an individual who has completed high school since he is unable to write in English.

With respect to the ALJ's finding that plaintiff has the "residual functional capacity" to do sedentary work, the ALJ was required to determine what work the plaintiff has the physical and mental capacity to do. *See Kerner v. Flemming*, 283 F.2d 916, 921 (2d Cir. 1960). The ALJ determined in a conclusory manner that the plaintiff could perform sedentary work. Although the ALJ determined in light of the medical evidence that plaintiff cannot engage in certain activities (*e. g.*, he cannot walk more than a certain number of blocks), he made no finding that the plaintiff can perform any particular functions nor did the ALJ relate the physical capabilities of the plaintiff to the definition of sedentary work. *See, e. g., Moguez v. Harris*, Civil No. 80–A–170 (D.Colo.1980). Sedentary work is defined as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

In addition, the ALJ did not adequately consider the medical evidence that plaintiff must alternate standing and sitting (Tr. 122). The category of sedentary work may not include occupations which allow a worker to alternate sitting and standing as required for his comfort. Thus, the plaintiff may not fall within the concept of sedentary work. *See Moguez v. Harris*, Civil No. 80÷A–170 (D.Colo.1980) (The sedentary category of work as defined in 20 C.F.R.

§ 404.1567(a) "does not necessarily include occupations which allow a worker to alternate sitting and standing as required for his comfort or jobs that require no stooping or bending,"). *Cf. Gonzalez v. Harris*, 496 F.Supp. 1014, 1016 (E.D.Pa.1980) ("[D]ue to the inability of plaintiff to travel [by any form of transportation, private or public], he cannot perform the full range of work defined as sedentary").

Since the Secretary in this case failed to produce evidence sufficient to show that the plaintiff is capable of performing sedentary work, one of the listed criteria in the tables, the regulations should not have been applied. The Secretary's new rules may only be applied where the factors coincide with the criteria of the tables: "[T]he existence of such jobs for individuals whose residual functional capacity or other factors do not coincide with the criteria of a rule must be further considered in terms of what kind of jobs or types of work may be either individually additionally indicated or precluded." 20 C.F.R. § 404.1569, Rule 200.00(b), Appendix 2, Subpart P. Upon remand, if the Secretary is unable to prove that plaintiff meets the listed criteria of the new tables, the case must be decided in light of the criteria of 20 C.F.R. §§ 404.1561, 404.1568, Rule 200.00(a) of Appendix 2. *See Vega v. Harris*, 636 F.2d 900 (2d Cir. 1981); *Figurroa v. Secretary of Health and Human Services*, Civil No. 79–5018 (S.D.N.Y. Sept. 23, 1980). As previously discussed, under *Kerner v. Flemming*, 283 F.2d 916 (2d Cir. 1960), the Secretary has the burden of proving not only what the plaintiff has the physical and mental capacity to do, but also "what employment opportunities [there are] for a man who can do only what the applicant can do." *Kerner, supra*, 283 F.2d at 921.

Similarly, we find the ALJ's conclusion with respect to transferability of plaintiff's skills insufficiently detailed. Although plaintiff's former employment in the manufacture of fur coats and in carpentry indicate an ability to perform "skilled work", *see* 20 C.F.R. § 404.1568, the ALJ did not

refer to, or apparently rely on, any specific evidence that plaintiff's skills were transferable. We therefore direct the ALJ, if on remand the tables contained in the new regulations are found to be applicable, to make detailed findings with respect to the transferability of plaintiff's skills.

The record shows that the decision of the Secretary is not supported by substantial evidence. On remand, the Secretary should be given the opportunity to demonstrate that the new regulations apply, or if they do not, the Secretary must otherwise demonstrate that there is available employment compatible with the plaintiff's impairment. The defendant's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is granted to the extent indicated by this opinion. This case is remanded to the Secretary for further proceedings and is hereby transferred to the suspense docket of this Court pending such proceedings.

SO ORDERED.