**Philip L. DAVIS, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. C 80–4490 TEH.**

United States District Court, N. D. California.

Feb. 8, 1982.

David W. Sternberg, San Mateo, Cal., for plaintiff.

John F. Barg, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## ORDER

HENDERSON, District Judge.

Plaintiff brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final decision of the Secretary of Health, Education and Welfare denying his claim for disability benefits. Both parties have moved for summary judgment. Having considered the papers of both counsel and the applicable law, the Court remands this case to the Appeals Council for further consideration in accordance with the rulings set forth below.

## I

Plaintiff Phillip Davis claims to have become disabled on February 22, 1979 due to increasing back and neck problems and persistent pain. Prior to his alleged disability, Davis had been employed for eighteen years as a forklift operator, and his injuries are, for the most part, work-related. He incurred neck and back injuries in an automobile accident in 1964 and lower back injuries in 1971. His back injuries necessitated disc surgery in 1972 and many months of convalescence. These injuries also have triggered calf problems in his left leg.

In November 1975, Davis ran his forklift into a pole and suffered serious neck injuries which prevented him from working for three weeks. This neck injury led to complications in his left arm, and in combination with his previous back injuries, required numerous hospitalizations and periods of inactivity which have continued until the present time.

Based on this history, plaintiff filed an application for disability benefits on May 22, 1979, which the Secretary denied both initially and upon reconsideration. Plaintiff then filed a request for a *de novo* hearing before an administrative law judge (ALJ), which took place on April 29, 1980.

At the hearing, plaintiff presented a series of medical reports in support of his claim. The report of Dr. Isadore Shapiro is particularly significant. In his report, Dr. Shapiro explained that plaintiff had injuries both to his lumbar and cervical spines. His diagnosis indicated that lumbar spine disability precludes heavy work and the cervical spine disability has become permanent, stationary, and ratable. Dr. Shapiro stated that plaintiff's work as a forklift operator was causing his condition to deteriorate and that Davis should be assigned to some other type of work which would not involve repeated twisting and turning of his cervical spine. He added that further periods of hospitalization for traction and physiotherapy might be required.

At the conclusion of the hearing, both the ALJ and plaintiff's attorney agreed upon the need for an up-to-date orthopedic examination to determine plaintiff's condition. Subsequently, Dr. Edward Troy examined plaintiff on May 21, 1980, almost a year and a half after Dr. Shapiro's examination. In his report, which the ALJ considered before making his decision, Dr. Troy stated,

> Subjectively (plaintiff) states that he can not sit for long periods of time and I think this is quite likely. I feel he might perform very light seated work on a part-time basis if he were allowed to change position.

Dr. Troy also completed the "Physical Capacities Evaluation" form supplied by the Social Security Administration. On that form, he circled items which indicate that plaintiff can sit for four, stand for three, and walk for two hours in an eight-hour workday; that he can occasionally carry up to 10 pounds, use both his hands for simple grasping, pushing and pulling and fine manipulations; that he can use both feet to operate foot controls; and that he cannot bend, squat, crawl, climb, or reach above shoulder level.

Plaintiff also testified on his own behalf at the hearing. He described the subjective pain associated with his injuries and testi-

fied that his condition had worsened since he stopped working. Significantly, the ALJ failed to present witnesses or evidence on behalf of the Secretary.

Based on this evidence, the ALJ applied the five-step sequential evaluation process provided by the new Social Security Regulations, 20 C.F.R. § 404.1503, for determining whether a claimant is disabled.[1] Finding that claimant's physical impairment is "severe" and that he is unable to perform his past relevant work as a forklift operator, the ALJ went on to make the required specific findings with respect to claimant's residual functional capacity, age, education, and work experience. *See*, § 404.1505–1508. The ALJ concluded that based on the uncontroverted medical findings and the claimant's subjective complaints as to pain, which the ALJ accepted as "generally credible," claimant is restricted to sedentary work. Furthermore, he concluded that claimant is forty years old, a younger individual; has a limited, tenth grade education; and is unskilled.[2] Having made these findings, the ALJ held that Rule 201.24, 20 C.F.R. § 404, Subpart P, Appendix 2, Table No. 1—the Secretary's new "Medical-Vocational Guidelines"—"direct(s) a conclusion that the claimant ... is not disabled." Therefore, the ALJ denied plaintiff's claim. The Appeals Council affirmed this decision on November 4, 1980, making that the final decision of the Secretary.

1. Section 404.1503 provides:

(a) [I]n determining whether an individual is disabled, a sequential evaluation process shall be followed ... The following evaluation steps shall be followed, but when a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step shall be unnecessary.

(b) *Is the individual currently engaging in substantial gainful activity?* Where an individual is actually engaging in substantial gainful activity, a finding shall be made that the individual is not under a disability without consideration of either medical or vocational factors.

(c) *Does the individual have any severe impairment?* Where an individual does not have any impairment(s) which significantly limits his or her physical or mental capacity to perform basic work-related functions, a finding shall be made that he or she does not have a severe impairment and therefore is not under a disability without consideration of the vocational factors.

(d) *Does the individual have any impairment(s) which meets or equals those listed in Appendix 1?* Where an individual's impairment(s) meets the duration requirement and is either listed in Appendix 1 or is determined to be medically the equivalent of a listed impairment, a finding of disability shall be made without consideration of the vocational factors.

(e) *Does the individual have any impairment(s) which prevents past relevant work?* Where a finding of disability or no disability cannot be made based on current work activity or on medical considerations alone, and the individual has a severe impairment(s), his or her residual functional capacity and the physical and mental demands of his or her past relevant work shall be evaluated. If the impairment(s) does not prevent the individual from meeting the physical and mental demands of past relevant work, including arduous unskilled physical labor, disability shall be found not to exist.

(f) *Does the individual's impairment(s) prevent other work?* If an individual cannot perform any past relevant work because of a severe impairment(s), but the individual's remaining physical and mental capacities are consistent with his or her meeting the physical and mental demands of a significant number of jobs (in one or more occupations) in the national economy, and the individual has the vocational capabilities (considering age, education, and past work experience) to make an adjustment to work different from that which he or she has performed in the past, it shall be determined that the individual is not under a disability. However, if an individual's physical and mental capacities in conjunction with his or her vocational capabilities (considering age, education, and past work experience) do not permit the individual to adjust to work different from that which he or she has performed in the past, it shall be determined that the individual is under a disability.

2. 20 C.F.R. § 404.1410(b) defines sedentary work:

Sedentary work entails lifting 10 pounds maximum and occasionally lifting or carrying such articles as dockets (e.g., files), ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1506, 1507, and 1511 define younger individual, limited education, and unskilled work.

## II

### A

The Secretary argues that substantial evidence supports his decision that Davis failed to meet his burden of establishing that he is disabled within the meaning of the Act. The contention that the burden of proving disability rests upon plaintiff, however, is misleading. Under the Ninth Circuit cases, as well as those of the vast majority of Circuits,[3] claimant establishes a prima facie case of disability upon a showing that claimant's impairment prevents him or her from engaging in his or her previous occupation. *See, Hall v. Secretary of Health, Education, and Welfare,* 602 F.2d 1372, 1375 (9th Cir. 1979). Once established, the burden then shifts to the Secretary to produce evidence which shows that given the claimant's age, education, work experience, and physical capacity, he or she can perform specified jobs in the national economy. *See, Id.* at 1377. Although this burden can be discharged by any reliable evidence of claimant's suitability for such jobs, the courts have repeatedly emphasized their preference for testimony of a vocational expert:

> A general statement that a claimant may engage in "sedentary" work, without testimony by a vocational expert who can identify specific jobs, absent other reliable evidence of the claimant's ability to engage in other occupations, does not satisfy the substantial evidence test.
>
> It is incumbent on the Secretary at a minimum, to come forward with specific findings showing that the claimant has the physical and mental capacity to perform specified jobs, taking into consideration the requirements of the job as well as the claimant's age, education, and background [citations].
>
> Ordinarily, the better method to demonstrate this is through testimony of a vocational expert.

*Hall, supra,* at 1377; *O'Banner v. Secretary of Health, Education, and Welfare,* 587 F.2d 321, 323 (6th Cir. 1978); *Wilson v. Califano,* 617 F.2d 1050, 1053–54. Additionally, subsequent Ninth Circuit cases expressly affirm *Hall's* continuing vitality. *See, Giampaoli v. Califano,* 628 F.2d 1190, 1192 (9th Cir. 1980); *Johnson v. Harris,* 625 F.2d 311, 312 (9th Cir. 1980) ("The Secretary must show that the claimant has the mental and physical capacity to perform specified jobs."); and *Lopez v. Califano,* 481 F.Supp. 392, 396 (N.D.Cal.1979).

In the case at hand, the ALJ simply made the finding that "[t]he claimant has the residual functional capacity confined to sedentary work." He failed to call a vocational expert to testify or to present any other evidence of the specific sedentary jobs claimant can perform, given his physical capacity, age, education, and work experience. Thus, under the express dictates of *Hall,* it appears that this case must be remanded.

We cannot, however, dispose of it so easily. Recently, the Secretary has promulgated new regulations for determining disability claims, *see* 20 C.F.R. §§ 404.1502–1513, which include the new "Medical-Vocational Guidelines" ("Guidelines") or "grid system." *See,* § 404, Subpart P, Appendix 2 (effective February 26, 1979). The Secretary designed these Guidelines as a means of more efficiently determining disability cases. The Guidelines specify that if claimant establishes that he or she is unable to perform his or her past relevant work, the ALJ must determine claimant's 1) "residual functional capacity," i.e., whether claimant is limited to sedentary, light, medium, heavy, or very heavy work; 2) age; 3) education; and 4) work experience. *See,* Appendix 2, Rule 200.00(c). The ALJ must then match these four variables with the appropriate corresponding category in the Tables provided in Appendix 2, and if the ALJ's findings coin-

---

3. *See, e.g., Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980); *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980); *O'Banner v. Secretary of HEW,* 587 F.2d 321, 323 (6th Cir. 1978); *Small v. Califano,* 565 F.2d 797, 800 (1st Cir. 1977); *Thompson v. Mathews,* 561 F.2d 1294, 1296 (8th Cir. 1977); *Lewis v. Weinberger,* 515 F.2d 584, 587 (5th Cir. 1975); *Meneses v. Secretary of Hew,* 442 F.2d 803, 806–09 (D.C.Cir. 1971).

cide with all the criteria of a rule, the Table will direct a finding of either disabled or not disabled. Under this system, the ALJ is bereft of any discretion:

> Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule *directs a conclusion* as to whether the individual is or is not disabled.

Appendix 2, Rule 200.00(a). (Emphasis supplied)

If the ALJ determines that claimant is restricted to sedentary work, as in the instant case, then Table 1 applies:

TABLE NO. 1.—RESIDUAL FUNCTIONAL CAPACITY: MAXIMUM SUSTAINED WORK CAPABILITY LIMITED TO SEDENTARY WORK AS A RESULT OF SEVERE MEDICALLY DETERMINABLE IMPAIRMENT(S)

| Rule | Age | Education | Previous work experience | Decision |
|---|---|---|---|---|
| 201.19 | Younger individual age 45–49. | Limited or less | Skilled or semiskilled—skills not transferable. | Not disabled. |
| 201.20 | ....do | ....do | Skilled or semiskilled—skills transferable. | Do. |
| 201.21 | ....do | High school graduate or more.. | Skilled or semiskilled—skills transferable. | Do. |
| 201.22 | ....do | ....do | Skilled or semiskilled—skills transferable. | Do. |
| 201.23 | Younger individual age 18–44. | Illiterate or unable to communicate in English. | Unskilled or none | Do. |
| 201.24 | Younger individual age 18–44. | Limited or less—at least literate and able to communicate in English. | Unskilled or none | Do. |
| 201.25 | ....do | Limited or less | Skilled or semiskilled—skills not transferable. | Do. |
| 201.26 | ....do | ....do | Skilled or semiskilled—skills transferable. | Do. |
| 201.27 | ....do | High school graduate or more.. | Unskilled or none | Do. |
| 201.28 | ....do | ....do | Skilled or semiskilled—skills not transferable. | Do. |
| 201.29 | ....do | ....do | Skilled or semiskilled—skills transferable. | Do. |

In this case, the ALJ also found that plaintiff is a younger individual, has a limited education, and is unskilled. Thus, because these findings correspond to the criteria of Rule 201.24, the Guidelines direct a conclusion that plaintiff is not disabled, as the ALJ held.

Under these procedures, the ALJ need not consider either the testimony of a vocational expert or any other reliable evidence of specific jobs which claimant could perform. In fact, one of the Secretary's purposes in promulgating these regulations was to avoid these requirements. *See Boyce v. Harris*, 492 F.Supp. 751, 752 (D.S. C.1980). The new provisions reflect the Secretary's determination that he can discharge his burden of proof by taking administrative notice of the existence and suitability of jobs in the national economy for claimants whose physical capacity and vocational factors coincide with all of the criteria of a particular rule. These Tables are based on information contained in the "Dictionary of Occupational Titles," published by the Department of Labor, and the "Occupational Outlook Handbook," published by the Bureau of Labor Statistics, as well as other reputable sources. *See* Rule 200.00(b).

Thus, the issue presented in this case is whether use of the Medical-Vocational Guidelines alone is sufficient to discharge the Secretary's burden, absent additional testimony by a vocational expert or other reliable evidence of specific jobs which claimant can perform. If not, then the

Secretary has failed to meet his burden and his decision is unsupported by substantial evidence. *See Hall, supra,* at 1377.[4]

B

■ Since the new regulations became effective in February 1979, numerous District Courts have considered the issue now before us.[5] Although these cases are sharply divided, a substantial majority has held that use of the grid is insufficient to discharge the Secretary's burden.[6]

Ninth Circuit interpretations of 42 U.S.C. § 423(d)(2)(A) also support this conclusion. *See, e.g., Hall, supra.* That section provides that a claimant is disabled if:

he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy.

In *Hall,* the Ninth Circuit emphasized the need for individualized findings which show that the claimant has the physical capacity to perform specified jobs, in view of the requirements of the job as well as the claimant's age, education, and work experience. To further protect claimant's rights in this regard, the Ninth Circuit also strongly advised the Secretary to procure the testimony of a vocational expert in order to discharge this burden.

Use of the grid system alone vitiates these protections. Prior to promulgation of the Guidelines, the Secretary considered the same four statutory factors of physical capacity, age, education, and work experience in determining disability cases. Now, however, the ALJ must mechanically plug these four factors into a Table which, in turn, produces a mandatory conclusion of dis-

abled or not disabled. To hold that use of the Guidelines alone discharges the Secretary's burden would substitute the use of Tables to evaluate factors which previously required individualized treatment, preferably by an expert. *Hall* stands resolutely against such a proposition.

So does *Phillips v. Harris, supra,* 488 F.Supp. at 1168, in which the court stated:

(I)t appears the Secretary has attempted to discharge the burden of going forward with the evidence in these cases without adducing any new evidence relative to the crucial issue. No reasoning, argument or rationale has been presented to justify the Secretary's apparent assertion that the new regulations are structured in such a manner as to permit the Secretary to discharge his burden by a different consideration of the same factors and issues that have previously been held to require evaluation by an expert.

*But see Stallings v. Harris,* 493 F.Supp. 956, 959 (W.D.Tenn.1980); *Frady v. Harris,* 646 F.2d 143 (4th Cir. 1981); *Simonsen, supra,* 512 F.Supp. at 1066; *Ward v. Harris,* 515 F.Supp. 859, 867 (W.D.Okla.1981); *New v. Harris,* 505 F.Supp. 721, 726 (S.D.Ohio 1980); and *Boyce v. Harris, supra,* 492 F.Supp. at 752 (all holding that the Secretary may rely on the grid to discharge his burden).

We find the reasoning of cases holding the grid system sufficient to discharge the Secretary's burden unpersuasive. We fail to see how use of Tables to resolve disability cases based on permutations of only four broadly defined variables can be equivalent to individual consideration by a vocational expert. As the court stated in *Fisher v. Schweiker,* 514 F.Supp. 119, 122 (W.D.Mo.

---

4. Claimant has not challenged and we do not consider the validity of the Guidelines as a whole. The Court notes, however, that the courts have almost unanimously upheld their validity. *See Phillips v. Harris,* 488 F.Supp. 1161, 1165 (W.D.Va.1980); *but see Santise v. Harris,* 501 F.Supp. 274 (D.N.J.1980).

5. Two District Courts within the Ninth Circuit have considered this issue, reaching opposite conclusions. *cf. Maurer v. Harris,* 502 F.Supp. 320 (D.Ore.1980) and *Simonsen v. Secretary of*

Health and Human Services, 512 F.Supp. 1064 (S.D.Cal.1981). *See* discussion *infra.*

6. The Ninth Circuit has not addressed this issue, but in recent decisions the Sixth and Fourth Circuits have upheld use of the grid system to discharge the Secretary's burden. *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (1981), *Frady v. Harris,* 646 F.2d 143 (4th Cir. 1981).

1981), "people do not easily fit into pigeonholes." And though use of the grid may benefit some claimants by directing a finding of "disabled" where the ALJ would have found "not disabled," *see Frady v. Harris, supra,* 646 F.2d at 145 and *Vega v. Harris,* 636 F.2d 900, 904 (2d Cir. 1981), we believe this only highlights the inherent degree of arbitrariness in the use of mechanical devices to resolve individual cases.

A more detailed analysis of *Hall* further illustrates the imprudence of relying on the grid system alone. In *Hall,* the court found that a general statement that a claimant can perform sedentary work is insufficient to discharge the Secretary's burden of proof. The underlying rationale for this holding is that the definition of "sedentary work" is too broad to be used meaningfully in resolving disability cases. Although a claimant may be capable of performing jobs which fall under the broad category of "sedentary work", those jobs all have a host of additional requirements which the claimant may be incapable of performing. Consequently, the court required that the Secretary make findings as to which specific jobs the claimant is capable of performing.

The grid system, however, relies on the same broad definitions of terms like "sedentary" which the court rejected in *Hall.* Thus, the grid directs a finding of not disabled because a claimant can perform jobs which fit under the Secretary's definition of sedentary, without any consideration of either the claimant's particular physical limitations or the particular requirements of any job. This is precisely what *Hall* intended to prohibit.[7]

In the *Simonsen* case, *supra,* the court reasoned that *Hall* did not establish a *per se* rule requiring the testimony of a vocational expert. Rather, the court asserted, *Hall* said that,

> (p)articular jobs must be identified "*absent* other reliable evidence of the claimant's ability to engage in other occupations."

*Id.* at 1066. (emphasis in original). Because the grid system is based on extensive research by the Secretary, the court concluded, it is such reliable evidence, and its use alone satisfies the Secretary's burden of proof.

This reasoning misconstrues *Hall* and flies in the face of what that court intended. *Hall* held that the Secretary need not *procure* a vocational expert to testify in every case, if the Secretary can present "other reliable evidence" of the claimant's ability to perform *specified* jobs. It did not intimate that the Secretary need not *identify* particular jobs the claimant can perform in every case. Thus, the court's attempt to distinguish *Hall* is unconvincing.

---

7. Rule 200.00(a) of Appendix 2 states,
> each of (the Secretary's) findings of fact (with respect to the claimant's residual functional capacity and vocational factors) is subject to rebuttal and the individual may present evidence to refute such findings. Where any one of the findings does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly does not direct a conclusion of disabled or not disabled.

This exception to the general rule that the Tables conclusively direct a finding as to the claimant's disability does not help the Secretary's case. First, because it is only an exception to the general rule, it reflects the Secretary's belief that the usual disability case can be decided routinely, without the aid of testimony by a vocational expert or specification of which particular jobs the claimant can perform. *See* the discussion *infra,* Part IV of this Opinion. The short answer to such a contention is that *Hall* and the other cases disagree.

More importantly, this rule is an attempt to shift the burden of identifying specific jobs onto the claimant. As previously noted, under *Hall,* the Secretary must identify the specific jobs which the Secretary believes the claimant can perform. The claimant may then present rebuttal evidence showing that he or she cannot perform those jobs. In contrast, under the grid system, the Secretary need only find that the claimant can perform a whole category of work (i.e., sedentary), which includes large numbers of jobs. The burden then shifts to the claimant to show that he or she cannot perform the full range of jobs which are included in that category. Because of the large numbers of jobs in each category and claimant's limited resources, having to discover which jobs fit under the relevant category and what their requirements are significantly alters the established burden of proof. We do not see how this burden shifting is justifiable under the case law nor why the Secretary should be allowed to mold the law in his favor.

Even were we to assume that use of the grid is equivalent to individual consideration, *Hall*'s specificity requirement serves two further salutary purposes which use of the grid would vitiate. As the Second Circuit pointed out in the recent case of *Decker v. Harris*, 647 F.2d 291 (2d Cir. 1981), the specificity requirement both assures the claimant of adequate notice of the grounds upon which his or her claim may be denied, providing him or her with the opportunity to present rebuttal evidence, and helps create a record so that a reviewing court can determine whether the Secretary's decision is based on substantial evidence. *Id.* at 248.

As to the former, the specificity rule requires the Secretary to set forth the specific jobs which he claims the claimant can perform and the particular requirements of those jobs. This enables the claimant to challenge the Secretary's contentions with rebuttal evidence showing either that he is in fact incapable of performing those jobs or that their requirements are different than the Secretary claims. In either case, the claimant is afforded the opportunity to challenge the ultimate finding that he or she can engage in substantial gainful employment.

In contrast, when utilizing the grid system, the Secretary provides the claimant with no notice of which jobs the Secretary believes he or she can perform. The claimant cannot be expected to present rebuttal evidence that he or she is unable to perform any job in the national economy on a job-by-job basis. Nor can the claimant attack the facts underlying the grid's conclusion that jobs exist in the national economy for a particular set of physical and vocational factors. Thus, the grid system places the claimant in the unenviable position which the *Hall* decision had obviated: the claimant can rebut only the Secretary's findings as to the four broadly defined physical and vocational factors; the ultimate conclusion that the claimant can perform jobs which exist in the national economy stands unassailable.

Similarly, the grid system limits the capacity of a reviewing court to determine whether the Secretary's decision is based on substantial evidence. Unlike the specificity requirement which enables the court to determine whether substantial evidence supports every element necessary to a finding that a claimant can perform a given job, *see O'Banner, supra*, 587 F.2d at 323, the grid system forces courts to assume that, if substantial evidence supports the Secretary's findings as to the four statutory physical and vocational factors, then substantial evidence supports the conclusion that the plaintiff is not disabled. What before was a matter of proof reviewable by the courts thus becomes unreviewable under the guise of administrative notice.

Use of the grid system may save the Secretary time and money, but it also abrogates important procedural rights which Congress has afforded applicants for disability benefits. This Court holds that use of the grid system does not discharge the Secretary's burden of proof and, therefore, the Secretary's decision in this case is not supported by substantial evidence.[8]

8. *Accord, Maurer v. Harris, supra* (holding that use of the grid is insufficient and testimony of a vocational expert necessary to discharge the Secretary's burden); *Powell v. Harris*, 516 F.Supp. 1001 (W.D.Ark.1981) (same); *Fisher v. Schweiker, supra* (vocational expert required), and *Williams v. Harris*, 500 F.Supp. 214 (W.D. N.C.1980) (same). *See also Santise v. Harris, supra* (an extreme case, holding that the Guidelines are invalid altogether under the Social Security Act).

As noted earlier, the Fourth Circuit is one of only two Circuits to have decided this issue. In *Frady v. Harris, supra*, the court held that use of the Guidelines is sufficient to discharge the Secretary's burden. However, the court included a cryptic footnote in which it suggested that in some cases testimony by a vocational expert might also be required. *Id.* at 144, n. 3. Moreover, a strong dissent was written by the same judge who authored earlier Fourth Circuit opinions requiring the Secretary to procure testimony by a vocational expert in almost all circumstances. *See Wilson v. Califano, supra.* The dissent stated,

In the final analysis, this decision is a perfect example of the mechanical application of administrative regulations without concern for the fundamental concepts or disability evaluation. Regardless of the regulations, the Secretary is obligated to set forth the claimant's specific skills, the specific jobs for which the

## III

■ This case must be remanded also because the ALJ did not explain adequately the basis for his finding that plaintiff can perform sedentary work. In a long line of well-reasoned cases culminating in *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981),[9] the Third Circuit has held that the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests, *Id.* at 704, including an explanation of how the ALJ weighed or why he or she rejected relevant evidence.

> Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, (citations), an explanation from the ALJ of the reason why probative evidence has been rejected is required.

*Id.* at 706–707.

The Court stated that the chief reason for this requirement is to provide an adequate basis for appellate review, but noted that,

> (a) statement of reasons or findings also helps to avoid judicial usurpation of administrative functions, assures more careful administrative consideration, and helps the parties plan their cases for judicial review.

*Id.* at 705. As the court stated in *Dobrowolsky v. Califano, supra,*

> unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the, conclusions reached are rational."

*Id.* at 407, *quoting Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). The Fourth Circuit has adopted the same requirements. *See e.g., Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979). The reasoning of these cases is clear and convincing, and, in the absence of controlling Ninth Circuit precedent, we choose to follow them here.

In this case, although the ALJ stated that his conclusion that the plaintiff can perform sedentary work was supported by the uncontroverted medical findings, he failed to indicate the weight that he accorded any of the medical evidence. Most important, he failed to explain how he resolved the crucial ambiguity in Dr. Troy's medical report, the most probative evidence of plaintiff's condition in the record. In his report, Dr. Troy wrote,

> I feel (plaintiff) might perform very light seated work on a part-time basis if he were allowed to change position.

But in completing the "Physical Capacities Evaluation" form supplied by the Social Security Administration, Dr. Troy circled items which indicate that plaintiff can sit for four, stand for three, and walk for two hours in an eight-hour workday. The clear surface inconsistency between these statements calls into question what Dr. Troy meant by his answers on the Physical Capacities Evaluation form. Perhaps he did not intend to imply that plaintiff can perform work for those hours on a sustained basis. Because the ALJ failed even to note this ambiguity, let alone explain how he resolved it, his decision that plaintiff can perform sedentary work is not supported by substantial evidence, and this case must be remanded for reconsideration of the evidence. *See Cotter v. Harris, supra.*

## IV

Finally, even if use of the grid were sufficient to discharge the Secretary's burden, we think the ALJ may have incorrectly applied the Guidelines in this case. Without explanation, the ALJ discounted the overwhelming medical evidence that plaintiff's ability to perform sedentary work is restricted by his need to change positions as comfort requires. As previously discussed, Rule 200.00(a) of Appendix 2 provides that only where all the findings of fact with

---

claimant qualifies, the availability of those jobs, and the basis for each such finding. *Frady, supra*, at 146.

**9.** *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Hargenrader v. Califano*, 575 F.2d 434 (3d Cir. 1978), and *Kennedy v. Richardson*, 454 F.2d 376 (3d Cir. 1972).

respect to an individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule does the rule direct a conclusion as to disability.

Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled.

Rule 200.00(a). Where no rule applies, full consideration must be given to all the facts in accordance with §§ 404.1505–1511, and to comply with *Hall*, evidence of specific jobs which the claimant can perform must be presented.

Rule 201.00(h) illustrates the application of this administrative scheme in a case in which the claimant is unable to perform the full range of jobs defined as sedentary[10] because of his or her capacity limitations:

"(A) finding of disabled is not precluded for those individuals under age 45 who do not meet all of the criteria of a specific rule and who do not have the ability to perform a full range of sedentary work. The following examples are illustrative: An individual under age 45 with a high school education can no longer do past work and is restricted to unskilled sedentary jobs because of a severe cardiovascular impairment ... A permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary. Since the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary), a finding of disabled would be appropriate.

For example, in *Moguez v. Harris*, 512 F.Supp. 11 (D.Colo.1980), the ALJ determined that claimant had the capacity "to perform sedentary work which permits alternation of sitting and standing as required." Applying the new Guidelines, the ALJ concluded that they directed a finding of not disabled. On appeal, however, the court held that the Guidelines can be applied to find a claimant not disabled only when the claimant's residual functional capacity to perform a certain category of work is "found to be virtually unrestricted." *Id.* at 15. Because the claimant could perform sedentary work only if permitted to alternate between sitting and standing as required for his comfort, the court held that claimant was unable to perform the full range of sedentary work and concluded that the new regulations were improperly applied. The court ruled that on remand the ALJ must give full consideration to all the relevant facts and that,

some vocational evidence in some form, including a description of the duties of specifically identifiable jobs, must be presented and matched to the individual claimant's age, education, experience, and functional restrictions.

*Id.* at 14–15.

Similarly, in *Deutsch v. Harris*, 511 F.Supp. 244 (S.D.N.Y.1981), after considering conflicting medical evidence, the ALJ found that the claimant could perform sedentary work and, thus, that the Guidelines directed a conclusion of not disabled. The court observed, however, that the ALJ had failed to explain how the claimant's physical capabilities related to the definition of sedentary work, and held that the ALJ had not adequately considered the medical evidence that plaintiff must alternate between sitting and standing as comfort requires. Following *Moguez*, the court remanded the case for reconsideration and presentation of further evidence on the question of whether the plaintiff could perform the full range of sedentary work. It indicated that if the plaintiff was unable to do so, then the Secretary would have to present evidence of which specific jobs the plaintiff actually could perform. *Id.* at 250. (*See also, Thome v. Secretary of HEW*, No. 80–C–

---

10. Sedentary work is defined as work which involves mainly sitting. *See* note 2, *supra.*

0171, slip op. (N.D.Ill. July 24, 1980), in which the court held that sedentary work requires the claimant to be able to sit for at least six hours per day.)

We find the reasoning of these cases persuasive and apply *Moguez* and *Deutsch* here. In this case, the ALJ found that the claimant is unable to perform heavy lifting, carrying, pushing, pulling, bending, stooping, squatting, or other physical activities calling for a high degree of physical strength and agility, but that he is capable of performing sedentary work. However, the ALJ did not find that the plaintiff can perform any particular functions nor did he relate the physical capabilities of the plaintiff to the definition of sedentary work. *See Deutsch, supra,* at 249.

Moreover, the overwhelming evidence, none of which the ALJ expressly discounted, strongly suggests that the plaintiff can perform work only if it permits him to alternate between sitting and standing as required for his comfort. As noted earlier, in his medical report Dr. Troy states,

> subjectively (plaintiff) states that he cannot sit for long periods of time and I think this is quite likely. I feel he might perform very light seated work on a part-time basis *if he were allowed to change position.* (emphasis supplied).

Dr. Troy also indicated that plaintiff can sit for only four hours in an eight hour work day. Similarly, Dr. Shapiro reported that the plaintiff had complained that the "pains in his low back are increased by prolonged sitting of over an hour or an hour and a half," and the plaintiff testified that he suffers calf pain, "(i)f I sit down too long or stand up too long." Significantly, the ALJ accepted the plaintiff's subjective complaints as generally credible, and increased calf pain which he suffered during a long drive to Monterey, noted by Dr. Kenefick, corroborates this testimony.

▮ In the absence of an explanation of why the ALJ rejected this evidence, we hold that the ALJ's finding that the plaintiff's capacity to perform sedentary work is unrestricted is not supported by substantial evidence. Therefore, even if use of the Guidelines were sufficient to discharge the Secretary's burden of proof, the Secretary could use the grid on remand only, if upon reconsideration, he determined that the plaintiff can perform the full range of sedentary work.

## CONCLUSION

Because we hold that use of the Guidelines is insufficient to discharge the Secretary's burden of proof,

IT IS HEREBY ORDERED that this case is remanded to the Secretary with instructions that the Secretary must present vocational evidence and specify the jobs which he believes the plaintiff can perform.

IT IS FURTHER ORDERED that the case is remanded to the Secretary for reconsideration and a fuller explanation of the bases for the Secretary's findings of fact.

IT IS FURTHER ORDERED that both parties shall have the opportunity to submit further evidence upon remand.